UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 05-CV-159-HRW

RONALD ROBINSON                                                                           PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

T. O'BRIEN, ET AL.                                                                      DEFENDANTS

Ronald Robinson, Sr., the *pro se* plaintiff who is confined at the Federal Correctional Center in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* complaint under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) [Record No 1]. He has paid the $250.00 filing fee.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under *Bivens*, the plaintiff must plead and prove two essential elements. First, he must show that he has been deprived of rights secured by the Constitution or laws of the United States. Second, he must demonstrate that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (I) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

NAME DEFENDANTS

The plaintiff names the following defendants, all of whom are employees of FCI-Ashland: (1) Ms. Ramey; (2) Officer Messer; (3) Mr. Brickey, "S.O.I.";[1] (4) Mr. Conley, Factory Manager; (5) Mr. Johnson, Assistant Factory Manager; and (6) Mr. Evans, UNICOR Foreman.[2]

RELIEF REQUESTED

The plaintiff seeks $3,300,000.00 in monetary damages from the defendants.

CLAIMS

The plaintiff asserts eleven (11) separate claims, ten of which he exhausted through the Bureau of Prisons ("BOP") Administrative Remedy Program, 28 C. F. R. 542.10 -19. The plaintiff alleges that the defendants attempted to restrict his right of access to the courts by retaliating against him in various ways, such as impairing his access to documents needed for filing administrative remedies within the BOP. He claims that the retaliation stemmed from the fact that he had filed earlier grievances against FCI-Manchester employees. The retaliation claims would fall under the First Amendment of the United States Constitution.

He claims that he was denied access to videos relating to his cultural and religious beliefs, a claim which would also fall under the First Amendment's guarantee of freedom of religion. He also claims that prison staff members harassed, threatened, singled him out, and repeatedly reprimanded him. Those claims would fall under either the Eighth Amendment, which prohibits

---

[1] The term "S.O.I" refers to "Superintendent of Industries," also referred to as Associate Warden/Industries and Education. An "S.O.I" is responsible for the efficient management and operation of a Federal Prison Industries, Inc. ("FPI") factory (*see infra*). 28 C. F. R. §345.119(b).

[2] The agency charged by Congress to manage inmate labor is Federal Prison Industries, Inc. ("FPI" or "UNICOR"). *Coalition For Government Procurement v. Federal Prison Industries, Inc*., 365 F.3d 435, 442 (6th Cir. 2004). "UNICOR" is the commercial or "trade" name of FPI. *See* 29 C.F.R. §345.11(a) (2003).

2

cruel and unusual punishment, and/or the Fourteenth Amendment of the United States Constitution, which guarantees equal protection of the law.

Finally, the plaintiff complains about not being reinstated in a UNICOR prison job at FCI-Manchester, and/or being denied a higher pay grade status in connection with the UNICOR job. The plaintiff also filed an "Affidavit" on February 16, 2005 [Record No. 4], which appears to be an amended complaint. In that submission, he complains about being removed from his job in the basement of the prison. He alleges that this action was motivated by retaliation. That claim would fall under the First and/or Fourteenth Amendments of the United States Constitution.

## DISCUSSION
### 1. Administrative Remedy No. 334577

The plaintiff claimed that a member of the Education staff accused him of not using the library facilities in an appropriate manner and that he was harassed by the action. The plaintiff's final BOP administrative appeal was denied on August 16, 2005. The plaintiff did not, however, file this action until September 26, 2005, over a year later. Constitutional claims asserted under *Bivens* claims have a one-year statute of limitations under Kentucky law. *See Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003); *McSurely v. Hutchison*, 823 F.2d 1002 (6th Cir.1987). Kentucky's one-year statute of limitations set forth in K. R. S. §413.140(1)(a) applies to civil rights claims arising in Kentucky. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir.1990). This claim is time-barred and must be dismissed.

### 2. Administrative Remedy Nos. 335122

The plaintiff claims that on August 21, 2004, Lieutenant Sligar engaged in misconduct by threatening and intimidating him and retaliating against him. The plaintiff states that he was running across the prison compound during a thunderstorm on his way to a meal. Lt. Sligar informed the

3

plaintiff that running was a violation of prison regulations and threatened orderly prison administration. Lt. Sligar warned the plaintiff to desist from engaging in this prohibited conduct.

The plaintiff has complained of nothing more than being warned about the ramifications of noncompliance with prison regulations. The plaintiff does not allege that he lost any good time credits in which he had a constitutionally protected liberty interest. *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997); *Wilson v. Wellman*, 238 F.3d 426, 2000 WL 1829265, **3 (6th Cir.(Mich.) December 6, 2000) (Unpublished Disposition). In fact, no sanctions were imposed. For a prisoner, a deprivation of a legally cognizable liberty interest occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995). Being warned about impermissible conduct does not amount to a constitutional violation.

To the extent the plaintiff depicts his treatment at the hands of prison staff as "harassment" and "intimidation," he fails to state a valid Eighth Amendment claim. Although verbal abuse by officials is not condoned, the law is clear that verbal abuse by itself does not violate the Constitution. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1981); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987). Mere vituperation or disparagement, no matter how repugnant, cannot amount to violation of a federal constitutional right. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998 (1983); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

Next, conclusory allegations of retaliatory motive "unsupported by material facts will not be sufficient to state ... a claim under § 1983." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir.1987)); *see also Williams v.*

4

*Bates*, 1994 WL 677670, at *3 (6th Cir. Dec.2, 1994) (unpublished) (plaintiff's claim of retaliatory transfer was "wholly conclusory and so [was] insufficient to state a cause of action under § 1983.").

Additionally, under 42 U. S. C. §1997e(e), an inmate may not bring a civil action for emotional or mental damages without a prior showing of a physical injury. *See also Mitchell v. Horn*, 318 F.3d 523 (3rd Cir. 2003) (prisoner asserting a mental or emotional injury as a result of conditions of confinement was required to show a prior physical injury which is more than a *de minimis*, but less than a significant injury); *Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001). No physical injury has been alleged. The claim is frivolous and is dismissed with prejudice.

### 3. Administrative Remedy Nos. 366180 and 366453 [3]

The plaintiff claims that on January 14, 2005, Lieutenant Sligar engaged in misconduct by threatening him and retaliating against him The BOP's responses indicate that Lt. Sligar informed the plaintiff that he was in jeopardy of receiving an Incident Report for "Possession of Anything Not Authorized." Sligar discovered that the plaintiff had magazines over three months old cell, which is prohibited by prison regulation. The plaintiff elected to discard the contraband items. It appears that no sanctions were imposed as a result of the discovery of the contraband.

First, the Court again finds that the plaintiff's assumptions regarding Sligar's motivation are purely conclusory. Bare allegations of malice do not suffice to establish a constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Second, the plaintiff has again complained of nothing more than being warned about the ramifications of noncompliance with prison regulations. The plaintiff does not allege that he lost any good time credits as a result of his actions. It appears

---

[3] The BOP deemed that the plaintiff's Administrative Remedy No. 366453 was a repeat of the claims asserted in Administrative Remedy No. 366180. On that basis, it denied No. 366453.

that he received a warning and elected to rid himself of the contraband instead of receiving an Incident Report. Under *Sandin*, the plaintiff suffered no loss amounting to a constitutional violation.

Third, as to the alleged retaliation claim, in order to establish a First Amendment retaliation claim, a plaintiff must prove that: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1 999) (en banc).

The relevant question regarding the second prong of the *Thaddeus-X* test is whether the defendants' alleged adverse conduct was "capable of deterring a person of ordinary firmness." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir.2002) (emphasis added) (quotation marks omitted). Actual deterrence need not be shown. *Id*; *See also Harbin-Bey v. Rutter*, 420 F.3d at 579. The plaintiff was deterred neither from filing grievances (having filed ten BOP grievances) nor from filing in this Court. He has not established retaliation. The claim is frivolous and is dismissed with prejudice.

4. <u>Administrative Remedy No. 338405</u>

The plaintiff claims that on May 25, 2004, Education Staff members Ms. Whitley and Ms. Grimes retaliated against him, harassed and intimidated him. The BOP's responses reveal that at best, the plaintiff was told by these prison employees that he was talking too loudly and his loud conversation was disturbing other inmates. Again, the plaintiff asserts no claim of constitutional magnitude under *Sandin*. He complains only about being told he was behaving improperly in the prison library area. No Incident Report was issued, and no sanctions were imposed.

Plaintiff is reminded that prison officials are vested with the right to not only comment on

6

disruptive behavior, but also to reprimand and, if necessary, discipline an inmate. "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration . . . has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner v. Safley*, 482 U.S. 78, 84 (1987). The plaintiff's claim lacks merit and is dismissed.

### 5. Administrative Remedy No. 369264

The plaintiff complains that his constitutional rights were violated by being denied a higher pay status in his UNICOR job. This claim has no merit. Prisoners have no constitutionally protected liberty interest in prison employment or a particular prison job. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991) (As the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir.1995) (holding that a prisoner's loss of job assignment is not a protected liberty interest because it does not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life).

To the extent that the plaintiff complains in his most current submission [Record No. 4] about being removed from his job, that particular claim is prematurely before the Court because he has not exhausted that claim through the BOP's administrative remedy program. 28 C. F. R. 542.10 -19. The claim is dismissed without prejudice.

### 6. Administrative Remedy No. 338405

The plaintiff claims that on May 3, 2004, Defendant Ramey interfered with his ability to file

a prior grievance against other prison staff. The BOP's responses reveal that the petitioner filed a Request for Administrative Remedy (No. 331831) with the Warden on May 3, 2004. The warden responded on May 12, 2004. The plaintiff had twenty days from that date (May 12, 2004) in which to file a BP-10 appeal to the BOP's Mid-Atlantic Regional Office ("MARO"). He missed the deadline and alleges that Defendant Ramey's failure to provide him with his original BP-8 (Attempt at Informal Resolution) prevented him from filing his BP-10 with the MARO on time.

That argument lacks merit. First, the BOP requires only that an inmate appealing a decision attach a *copy* of a prior adverse decision, not the original. Second, in order to file a BP-10 appeal with the MARO, the plaintiff was only required to have attached his denied BP-9 appeal. He was not required to provide a copy of the BP-8 Request. The claim is frivolous and must be dismissed.

### 7. Administrative Remedy Nos. 364684 and 365534 [4]

The plaintiff claims that prison staff searched his cell for contraband more often than they searched other inmates' cells. On January 13, 2005, the plaintiff's cell was searched and various items of contraband were confiscated. The BOP's responses state that pornography was discovered among the plaintiff's legal papers. Under BOP Program Statement 5521.05, *Searches of Housing Units, Inmates, and Inmate Work Areas*, prisoners' cells are subject to searches by staff.

The plaintiff does not deny that contraband was found among his papers. Rather, he attempts to disguise his violation of the prison regulation by complaining that he was being harassed and intimidated. The argument fails, because the BOP was within its right to search his cell and confiscate the contraband. "Execution of policies and practices regarding the operation of jails and

---

[4] The BOP deemed that the plaintiff's Administrative Remedy No. 365534 was a repeat of the claims asserted in Administrative Remedy No. 364684. On that basis, it denied Administrative Remedy No. 365534.

prisons are "considerations peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). The plaintiff's claim is frivolous and must be dismissed with prejudice.

### 8. Administrative Remedy No. 354887

The plaintiff filed a grievance in which he complained about being denied permission to have unrestricted access to videotapes and textbooks which were part of a "Black History" prison class. According to K. M. White of the MARO, the plaintiff completed an African History class in 2004, and as a participant, the plaintiff had access to the textbooks and videotapes. While enrolled in the class, the plaintiff viewed the videotapes but chose not to avail himself of the textbook materials.

Construed broadly, the plaintiff's claim--that he was denied the ability to pursue his religious interests--would fall under the First Amendment. Courts evaluate prison policies that infringe on the religious rights under a "rational relationship" that provides that a policy is valid if "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. at 89. Factors to consider in applying this standard include, "(1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest ...; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation." *Id*.

As the plaintiff viewed the videos while enrolled in the class, but declined access to the

9

books at that time, his current demand lacks merit. As Harrell Watts, Administrator of the BOP's National Inmate Appeals noted, the plaintiff has access in the prison leisure library to other reading sources on the subject. Accommodation of the plaintiff's demand--to provide him access to videos which are part of a class curriculum--would place an unreasonable burden on prison staff. Prison resources must be allocated in a reasonable manner. If staff were required to produce these videos for every prisoner who requested them, even if they were not in the class, the staff would be unduly burdened by such demands and the orderly running of the prison would be affected. The operation of a prison library is not the equivalent of a public library available to non-prisoners, who may request a wide variety of materials subject to only minimal limitations, such as supply.

While it is true that incarceration does not strip inmates of all constitutional protections, *see Turner*, 482 U.S. at 84, it is clear that the constitutional rights of inmates are "more limited in scope than the constitutional rights held by the individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S. Ct. 1475 (2001). In *Shaw*, the Supreme Court said that because the "problems of prisons in America are complex and intractable," and because courts are particularly "ill equipped" to deal with these problems . . . we generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." *Id*. (citation and quotation omitted).

Alternatively, under an Eighth Amendment analysis, the plaintiff's inability to have access to his videos he desires simply does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484. This claim is frivolous and will be dismissed with prejudice. 28 U.S.C. §1915(e)(2)(ii).

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The plaintiff's claims set forth in his complaint [Record No. 1] are **DISMISSED WITH PREJUDICE**.

(2) The plaintiff's claims set forth in his "Affidavit" [Record No. 4] are **DISMISSED WITHOUT PREJUDICE**.

(3) The plaintiff's "Motion for Order to Proceed for Service of Process" [Record No. 2] is **DENIED** as **MOOT**.

(4) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

This February 23, 2006.

Signed By:
*Henry R Wilhoit Jr.*
United States District Judge